UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES L. JOHNSON, III,<br><br>                   Petitioner,<br>    v.<br><br>JASON BENNETT,<br><br>                   Respondent. | CASE NO. 2:24-CV-1200-JLR-DWC<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: December 6, 2024 |

The District Court has referred this federal habeas action to United States Magistrate Judge David W. Christel. Petitioner James L. Johnson, III, proceeding *pro se*, filed his federal habeas petition, pursuant to 28 U.S.C. § 2254, seeking relief from his state court conviction and sentence. *See* Dkts. 1, 9. The Court concludes the petition is time-barred and recommends the petition be dismissed with prejudice and a certificate of appealability not be issued.

**I.    Background**

    A.  <u>Factual Background</u>

In 2016, in the Superior Court of Washington for King County, a jury found Petitioner guilty of two counts of rape of a child in the first degree. *See* Dkt. 13-1 (Ex. 1). The Washington

REPORT AND RECOMMENDATION - 1

State Court of Appeals, Division I, summarized the facts of Petitioner's case as follows:

> In 2013, James Johnson began dating a woman. Johnson was the exclusive child care provider for the woman's eight year old son, M.D., while she was at work. It was normal for Johnson and M.D. to wrestle together at home. According to M.D., Johnson, while in his boxers, would wrestle M.D. to the ground, position himself behind M.D., and insert his penis into M.D.'s anus. These assaults would happen this same way each time.
>
> M.D. told his mother that Johnson had "put something in his butt." Johnson was charged with two counts of rape of a child in the first degree for his acts against M.D.
>
> The State sought to introduce at trial evidence of similar assaults against two other children as a common scheme or plan. First, Johnson had also been accused of raping his female cousin, M.G. M.G. is seven and a half years younger than Johnson. Johnson would babysit her. M.G. was expected to follow Johnson's instructions while he was watching her.
>
> M.G. alleged that, while she was between nine and 12 years old, Johnson repeatedly molested and raped her. On one occasion, M.G. and Johnson were home alone, sitting on a couch. Johnson bent M.G. over on the couch, pulled down her pants, and attempted to put his penis inside of her anus. Johnson's penis slightly penetrated her, but Johnson stopped once M.G. started crying. The trial court admitted this act as evidence of a common scheme or plan, but excluded other instances of alleged molestation of M.G. as not sufficiently similar to the facts alleged by M.D.
>
> Second, Johnson was accused of raping another cousin, P.P.J. P.P.J. is eight years younger than Johnson. Like M.G., Johnson would also look after P.P.J. P.P.J. alleged that he and Johnson would "fake wrestle" emulating wrestlers that they saw on television. Some of Johnson's wrestling moves turned into touching P.P.J.'s genitalia and buttocks. The wrestling lasted ten minutes and the touching occurred the entire time.
>
> In an 11 page written findings of fact and conclusions of law, the trial court explained that it would admit only some of the evidence:
>
>> The Court is only finding that certain, specific acts of sexual misconduct against M.G. and P.P.J. are admissible to demonstrate the defendant's common scheme or plan. These acts include the following: (1) the defendant anally raping M.G., when he was babysitting her and no other adults were present, and (2) the defendant repeatedly fondling P.P.J.'s genitalia during an incident of play-wrestling. The other acts, referenced above, are not admissible because they do not contain sufficient similarities to be considered part of the same common scheme or plan. However, these two

REPORT AND RECOMMENDATION - 2

> specific prior acts demonstrate substantial degrees of similarity such that they can be explained as individual manifestations of a common plan.
>
> . . .
>
> The Court is very mindful about not admitting propensity evidence. This case is based on the testimony of a young child, M.D., who delayed reporting the alleged abuse. There is no physical evidence to corroborate M.D.'s testimony. The defendant allegedly raped M.D. in secrecy so no other adults could bear witness to the abuse or protect M.D. Evidence of prior bad acts is highly probative because it tends to prove material issues of the charged crime: whether the defendant had sexual contact with M.D. The Court has conducted an ER 403 balancing test and finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. The evidence is highly probative for all the reasons discussed above. Finally, to cure any potential prejudice, the Court will provide the jury with a limiting instruction, which will specifically tell the jury that they shall evaluate the prior sexual misconduct evidence only for the limited purpose of assessing common scheme or plan.

A jury found Johnson guilty of both counts of rape of a child in the second degree. *Id.* (Ex. 8) (footnotes omitted); *State v. Johnson*, No. 75429-7-I, 2017 WL 6594803, at *1–2 (Wash. Ct. App. Dec. 26, 2017) (unpublished).

B. Procedural Background

1. *Direct Appeal*

On May 27, 2016, the trial court sentenced Petitioner to an indeterminate sentence of 160 months to life imprisonment for each of the two convictions, to be served concurrently. *See* Dkt. 13-1 (Ex. 1). Petitioner challenged his convictions and sentence on direct appeal. *Id.* Through counsel, Petitioner argued that the trial court erred by admitting evidence of his prior acts of sexual misconduct against children and challenged several community custody conditions. *Id.* (Ex. 2). Petitioner also raised thirteen added arguments in a *pro se* statement of additional grounds for review. *Id.* (Ex. 3). On December 26, 2017, the Washington State Court of Appeals, Division I, issued an unpublished opinion affirming Petitioner's convictions but remanding for

REPORT AND RECOMMENDATION - 3

modification of certain community custody conditions. *Id.* (Ex. 8). Petitioner filed a motion for reconsideration, which was denied. *Id.* (Ex. 9, 10).

Petitioner then filed a petition for discretionary review with the Washington Supreme Court. *Id.* (Ex. 11). Through counsel, Petitioner argued that the trial court erred by admitting the prior acts of sexual misconduct and violated his right to present a defense by excluding testimony that impeached M.D.'s credibility or, alternatively, that counsel was ineffective for failing to impeach M.D.'s credibility. *Id.* A panel of the Washington Supreme Court denied review. *Id.* (Ex. 13). The Court of Appeals issued its mandate on July 27, 2018. *Id.* (Ex. 14).

2. *Personal Restraint Petition*

Petitioner filed a *pro se* CrR 7.8 motion seeking relief from his convictions in King County Superior Court dated July 5, 2023. *Id.* (Ex. 15). The trial court concluded the motion was time-barred and transferred it to the Court of Appeals for consideration as a personal restraint petition ("PRP"). *Id.* Petitioner submitted a statement of additional grounds for review to the Court of Appeals. *Id.* (Ex. 16). On October 25, 2023, the Court of Appeals dismissed the PRP, finding it was clearly time-barred under RCW 10.73.090 and Petitioner had not presented reliable evidence showing he met the actual innocence exception to the time-bar. *Id.* (Ex. 17). Petitioner again sought discretionary review by the Washington Supreme Court. *Id.* (Ex. 18). The Court denied review on the same grounds as the Court of Appeals. *Id.* (Ex. 19). The Court of Appeals issued a certificate of finality on December 11, 2023. *Id.* (Ex. 20).

3. *Federal Petition*

On July 31, 2024, Petitioner initiated this case. *See* Dkt. 1. In his petition, Petitioner raises the following four grounds for relief:

1. Ineffective assistance of counsel – failed to notify client of favorable plea deal and negotiations.

REPORT AND RECOMMENDATION - 4

    2. Ineffective assistance of counsel – failure to call any witnesses on Petitioner's behalf.

    3. Ineffective assistance of counsel can provide basis for vacating a judgment under CrR 7.8(b)(5).

    4. Failure to interview witnesses – ineffective assistance of counsel.

Dkt. 9 at 5–10. On September 12, 2024, Respondent filed, and served on Petitioner, a response to the petition. Dkt. 12, 13. In the response, Respondent asserts that the petition should be dismissed with prejudice because Petitioner's claims are time-barred and because Petitioner has not demonstrated actual innocence. Dkt. 12 at 1. Petitioner did not file a reply. *See* docket.

## II. Discussion

### A. Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, a one-year statute of limitations applies to federal habeas petitions. Section 2244(d)(1)(A) requires a prisoner to file a habeas petition within one year of "the date on which the [state court] judgment [of conviction] became final by the conclusion of direct review or the expiration of the time for seeking such review." The one-year period is tolled if a "properly filed application for state post-conviction or other collateral review . . . is pending" during the limitations period. *Id.* § 2244(d)(2); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005).

The Washington Supreme Court denied discretionary review of Petitioner's direct appeal on July 11, 2018. Dkt. 13-1 (Ex. 13). The time for filing a petition for writ of certiorari to the United States Supreme Court expired ninety days later, on October 9, 2018. *See* Sup. Ct. R. 13(1); Fed. R. Civ. P. 6(a). On that date, Petitioner's judgment and sentence became final for purposes of 28 U.S.C. § 2244(d)(1)(A). *See Patterson v. Stewart*, 251 F.3d 1243, 1245–46 (9th Cir. 2001) (holding that Federal Rule of Civil Procedure 6(a) applies to the calculation of time

REPORT AND RECOMMENDATION - 5

limits under the AEDPA). The AEDPA statute of limitations began to run on the following day, October 10, 2018, and expired one year later, on October 10, 2019. *See Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002) ("[Petitioner's] one-year statute of limitations began to run on . . . the day after his conviction became final.").

Petitioner did not seek state collateral review until July 5, 2023, over three years after the time for filing a federal habeas petition had expired. *See* Dkt. 13-1 (Ex. 15). As the PRP was filed after the expiration of the one-year period, it did not toll the statute of limitations. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (holding "section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed"); *Brown v. Curry*, 451 Fed. App'x 693 (9th Cir. 2011) (finding the petitioner's state habeas petitions, which were filed after the expiration of the statute of limitations and denied as untimely, did not toll the statute). Additionally, Petitioner's PRP did not toll the statute of limitations because an application for review denied by the state court as untimely under state law is not "properly filed" for purposes of section 2244(d)(2). *See Pace*, 544 U.S. at 417; *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007).

As Petitioner did not file the petition within one year of his direct appeal becoming final and his PRP did not toll the limitations period, the Court finds the petition is untimely. *See Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001) (federal petition is time-barred where state habeas petition is filed after expiration of the statute of limitations).[1]

---

[1] To the extent Petitioner is attempting to assert the limitations period began to run after the date his judgment became final because of newly discovered evidence, this argument fails. Under 28 U.S.C. § 2244(d)(1)(D), the limitations period may commence on the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. Here, Petitioner has not shown he could not discover the facts giving rise to his claims before the date the judgment was final. Therefore, section 2244(d)(1)(D) does not apply in this case.

REPORT AND RECOMMENDATION - 6

B. Equitable Tolling

The AEDPA statute of limitations is subject to equitable tolling where a petitioner pursued his rights diligently but "'some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace*, 544 U.S. at 418). To receive equitable tolling, a petitioner at the very least must show the extraordinary circumstances "were the but-for and proximate cause of his untimeliness." *Ansaldo v. Knowles*, 143 Fed. App'x 839, 839–40 (9th Cir. 2005).

Petitioner does not argue he is entitled to equitable tolling, nor does he demonstrate any extraordinary circumstance prevented him from filing a timely habeas petition. *See* Dkt. 9. Rather, Petitioner claims "an equitable *exception* to § 2244(d)(1)[.]" *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (emphasis in original). Accordingly, Petitioner fails to show he is entitled to equitable tolling, and the petition is barred by the section 2244 limitations period unless an exception to the time-bar applies.

C. Actual Innocence

The statute of limitations is subject to an actual innocence exception. *See Schlup v. Delo*, 513 U.S. 298 (1995). To present otherwise time-barred claims to a federal habeas court under *Schlup*, a petitioner must produce sufficient proof of his actual innocence to bring him "within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Id.* at 314–15 (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). The evidence of innocence must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 316.

A "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327. Under *Schlup*, Petitioner is required "to support his allegations of constitutional error with new reliable evidence—whether it be

REPORT AND RECOMMENDATION - 7

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id*. at 324. The habeas court must then "consider all the evidence, old and new, incriminating and exculpatory," admissible at trial or not. *House v. Bell*, 547 U.S. 518, 538 (2006) (cleaned up). On this complete record, the court makes a "probabilistic determination about what reasonable, properly instructed jurors would do." *Id*. (quoting *Schlup*, 513 U.S. at 329).

Here, Petitioner contends his actual innocence claim is "supported by newly presented and newly discovered emails and affidavits[.]" Dkt. 9 at 13. The additional evidence submitted by Petitioner with his state court filing includes an email from a prosecutor to Petitioner's defense attorney dated December 9, 2015, indicating that the State was open to plea negotiations. Dkt. 13-1 (Ex. 15). He also submits his own declaration and declarations from Starr Garden, Petitioner's mother; and Jasmine Johnson; Petitioner's sister. *Id*. Ms. Garden and Ms. Johnson's declarations dispute trial testimony that Petitioner had previously sexually abused two of his cousins, M.G. and P.P.J., in a similar manner as the alleged assault against M.D. *Id.*

Here, the declarations proffered by Petitioner concern only Petitioner's prior acts, not the charged crimes themselves. *See Gandarela v. Johnson*, 286 F.3d 1080, 1087 (9th Cir. 2002) (where neither new witness "had any direct information regarding the crime," information providing potential grounds for "speculative and collateral impeachment falls far short of showing actual innocence."). As Respondent points out, "[n]either declarant purports to have knowledge of whether [Petitioner] raped M.D., the victim of his crimes." Dkt. 12 at 13. During his trial testimony, M.D. described the repeated assaults while he was home alone with Petitioner and identified Petitioner in court as his assailant. *See* Dkt. 13-1 (Ex. 25 at 476–85). Even if, as Petitioner argues, the evidence from Ms. Garden and Ms. Johnson had made the evidence of Petitioner's prior acts inadmissible, this evidence does not challenge M.D.'s first-hand testimony

REPORT AND RECOMMENDATION - 8

about the charged crimes. *See Sistrunk v. Armenakis*, 292 F.3d 669, 677 (9th Cir. 2002) (newly-presented evidence providing a basis for impeachment of the prosecution's main witness did not fundamentally call into question the reliability of the conviction when, "[e]ven if the allegedly false and biased nature of [the witness'] testimony would have devastated her credibility, it would not have cast doubt on the first-hand account of the victim, who positively identified Sistrunk as the rapist in open court."). Accordingly, the Court cannot conclude that it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt, and Petitioner has not made a sufficient showing of actual innocence to overcome the time-bar.

### III.     Evidentiary Hearing

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). A hearing is not required if the allegations would not entitle Petitioner to relief under § 2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. The Court finds it is not necessary to hold an evidentiary hearing in this case because, as discussed in this Report and Recommendation, the petition may be resolved on the existing state court record.

### IV.     Certificate of Appealability

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

REPORT AND RECOMMENDATION - 9

from a District or Circuit Judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." *Id*. Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or would conclude the issues presented in the petition should proceed further. Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability with respect to this petition.

### V.     Conclusion

For the above-stated reasons, the Court finds the petition is untimely as it was filed more than one year after the state court judgment became final. There are no extraordinary circumstances in this case requiring the application of equitable tolling principles, nor has Petitioner established that the "actual innocence" exception to the time-bar applies. Therefore, the petition is barred by the one-year limitations period imposed under 28 U.S.C. § 2244(d) and should be dismissed with prejudice. No evidentiary hearing is required and a certificate of appealability should be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have **fourteen (14) days** from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the District Judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012). Accommodating the time limit imposed by Fed. R.

Civ. P. 72(b), the Clerk is directed to set the matter for consideration on **December 6, 2024**, as noted in the caption.

Dated this 15th day of November, 2024.

*/s/ David W. Christel*
David W. Christel
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11